**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **MARGARET ANDERSON,** ) <br> **MARY DIXON, LATASHA WILLIAMS,** ) <br> **and KYONNE SUTHERLAND,** ) <br> ***Individually and on behalf of all Others*** ) <br> ***Similarly situated,*** ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> **SOUTHERN HOME CARE** ) <br> **SERVICES, INC., and** ) <br> **RES-CARE, INC.,** ) <br> ) <br> **Defendants.** ) <br> _____) | **CIVIL ACTION FILE** <br> **NO.: 1:13-cv-00840-LMM** |

**CONSENT MOTION FOR PRELIMINARY APPROVAL**
**AND BRIEF IN SUPPORT**

Plaintiffs Margaret Anderson ("Anderson"), Mary Dixon ("Dixon"), Latasha Williams ("Williams"), and Keyonne Sutherland ("Sutherland") (the "Named Plaintiffs" collectively), with the consent of Defendants Southern Home Care Services, Inc. ("SHCS") and ResCare, Inc. ("ResCare") (collectively "Defendants"), move for preliminary approval of the settlement reached in this class-action matter. The Parties have negotiated a proposed settlement of Plaintiffs' class claims which is fair, reasonable, and adequate, and serves the best interests of the Class Members.

The Parties, by stipulation and with the Court's approval, previously stipulated to the existence of a plaintiff class and the undersigned were appointed as Class Counsel [Docket No. 77].   Plaintiffs, therefore, request that the Court (1) confirm those prior holdings for purposes of this settlement, (2) grant preliminary approval of the settlement relief to the Class, the named plaintiffs, and Class Counsel, (3) approve the proposed notice plan and the forms of settlement notice and order provision of such notice, (4) appoint Simpluris, Inc. as the Settlement Administrator to oversee the administration of the Settlement; and (5) schedule a final fairness hearing and related dates as proposed by the Parties.

Filed with this brief as Exhibit "1" is the Settlement Agreement and Release of Claims ("Settlement Agreement") reached between the Parties, including, as exhibits, the form of notice, claim form, exclusion form, and proposed preliminary approval order.   Class counsel have obtained oral consent to this proposed settlement from the class representatives. The Parties jointly seek approval of those materials as submitted to the Court.

## I.     Background Facts and Procedural History.

### A.     The nature of the Plaintiffs' work.

The Court is aware of the background facts of this matter as a result of the Parties' extensive briefing on other issues.  For summary, however, SHCS operates

a non-medical homecare business in Georgia out of several local branch offices located throughout the state. Its clients are persons who by reason of advanced age, physical disability, or mental deficiency need supervision and care in their home. SHCS's employees supervise, feed, bathe, groom, and dress clients who cannot perform those tasks without assistance.

SHCS employs homecare workers to provide the above-referenced services. The current job title of those individuals is "Direct Care Staff" or "DCS"; they may also sometimes be referred to generically as "caregivers."[1] DCS employees perform their work almost exclusively in private homes.

Some DCS employees have only one client; others have multiple clients. Thus, some DCS employees may visit multiple clients during a work day. DCS employees with more than one client sometimes (but not always) drive from client-to-client during a work day, in a back-to-back series of visits. Sometimes these drives consist of travel directly between clients. In other situations, however, a DCS employee may have a considerable amount of time between visits where he/she is free to return to their home, run errands, eat meals, go shopping, work

---

[1] SHCS also employs a much smaller number of non-exempt traveling nurses who provide in-home nursing care – the non-exempt nurses are also included in the class. Other than the type of care provided, the nurses' work days are structured similarly to those of the DCS employees, and therefore are not discussed separately.

out, or engage in any other personal activities.   SHCS places no limitations whatsoever on its DCS employees related to this "gap" time.

Until January 1, 2016, SHCS classified its DCS employees as exempt under the Fair Labor Standards Act's "companionship" exemption. *See* 29 U.S.C. §213(a)(15).[2] Unlike the more common executive/professional/administrative exemptions, the companionship exemption does not require employees to be paid on a salary basis.   As a result, SHCS based its payments to its DCS employees on their visits – pay was calculated based upon the amount of time the DCS employee spent in the client's home or attending to client needs, usually at rates ranging from $10-$14 per hour.   In this sense, the DCS employees were paid based upon a hybrid hourly/piece rate system.

**B.     The legal issues in this case.**

Plaintiffs' principal contention is that members of the plaintiff class who drove between multiple clients in a work day are entitled to pay under the Georgia Minimum Wage Law ("GMWL"), O.C.G.A. 34-4-1 *et seq.* for the hours they spent

---

[2] SHCS's DCS employees were re-classified as non-exempt effective January 1, 2016 as a result of the U.S. Department of Labor amending its regulations to prevent third-party employers like SHCS from relying upon the companionship exemption.   The amendment to the regulations changed law that had existed for over 40 years.

4

driving between clients – the Parties have referred to this as "Drive Time".[3] Defendants contend that Plaintiffs were paid for their Drive Time consistent with the GMWL based upon the pay they received on a weekly basis.

More specifically, Plaintiffs' claim in this case is that Defendants were, under the GMWL, required to pay at least $5.15 as a specific hourly wage to SHCS's direct care staff for Drive Time. Plaintiffs' argument is that the language of the GMWL requires an employer to specifically assign an applicable hourly rate to each *individual* hour worked by a Georgia employee. Under Plaintiffs' reasoning, no Georgia employer can lawfully use a piece-rate or commission system to pay its non-exempt (or exempt) personnel – unless they simultaneously pay those employees at a rate equal to or above $5.15 per hour. Thus, according to Plaintiffs, SHCS's failure to assign a specific hourly rate to the time its DCS employees spent driving between clients during a work day means that the

---

[3] Plaintiffs also contend that at least some of them spent time engaged in preliminary or post-liminary activities associated with their client visits for which they were not compensated. This is a much less substantial claim, and one for which the Parties have not stipulated to a class. Defendant's position is that DCS employees do no meaningful work outside of the clients' homes; any paperwork related to client care is usually completed at the client's home before the employee clocks out and leaves, and even if any "work" was performed, it would have been entirely *de minimus*. Defendants also dispute that such claims can be properly brought on a class basis.

members of the plaintiff class are entitled to compensation at $5.15 per hour for any time they spent driving on SHCS business.

It is not disputed by Defendants, for purposes of the settlement only, that SHCS did not assign a specific hourly wage[4] to the time some of its Georgia employees, who were otherwise paid on an hourly basis, spent while engaged in Drive Time.[5] The Parties disagree whether the putative class is entitled to additional payments under the GMWL for Drive Time, or that any class member is entitled to proceed on a class basis with respect to Plaintiffs' secondary claims.

### C.    Procedural History of this Litigation

On February 15, 2013, the Named Plaintiffs filed this case against Defendants in the Superior Court of DeKalb County, Georgia ("the Action"). Defendants removed to this Court. After removal, the Parties litigated and briefed several issues related to the GMWL's applicability, two of which were certified to the Georgia Supreme Court for resolution.   After briefing and oral argument, the Georgia Supreme Court issued its opinion with respect to the certified questions on

---

[4] Instead, SHCS's position is that the aggregate amounts paid to potential class members during any applicable workweek complied with the GMWL's requirements.

[5] Nothing contained herein shall constitute a waiver of any defense previously or hereinafter asserted by Defendants. Similarly, nothing contained herein shall constitute a waiver of any party's rights to challenge the Court's determination of the applicable limitations period.

November 23, 2015.  The Georgia Supreme Court's decision, however, left many issues undecided, including, among others:

(1)     Whether, under the GMWL, the minimum wage should be calculated on a workweek basis or under a "per-hour" approach; and

(2)     Whether Plaintiffs can assert their GMWL claims as a class action, or are limited to separate individual actions, under the "no-piggybacking" rule articulated by the Eleventh Circuit in *Griffin v. Singletary*, 17 F.3d 556 (11th  Cir. 1994), and *Ewing Indus. Corp. v. Bob Wines Nursery, Inc.,* 795 F.3d 1324 (11the Cir. 2015).

After the case was remanded back to this Court, the Parties briefed the potentially dispositive or partially-dispositive issues described above. First, the Court heard argument on whether Plaintiffs can bring their claims on a class basis under the Eleventh Circuit's holdings in *Griffin v. Singletary*, 17 F.3d 556 (11th Cir. 1994), and *Ewing Indus. Corp. v. Bob Wines Nursery, Inc.,* 795 F.3d 1324 (11th Cir. 2015). It found on June 8, 2016 [Dkt. No. 40] (the "June 8 Order") that Plaintiffs could bring class claims.  Second, the Court heard argument on whether Georgia employers could rely upon a workweek-based calculation methodology for purposes of complying with the requirements of the GMWL. The Court's September 21 Order [Docket No. 41] (the "September 21 Order") held that in

7

Georgia, payments made to exempt employees cannot be averaged over the course of a workweek for purposes of complying with the GMWL. *See* September 21 Order, p. 19. Defendants moved for an interlocutory appeal of both the June 8 Order and the September 21 Order, which the Court denied on January 3, 2017 [Docket No. 45].

### D.   This is, effectively, an "all or nothing" dispute.

Whether Plaintiffs can recover anything in this case is dependent upon how the two issues described above are ultimately resolved by this Court and on appeal.[6]   That is a major driver related to the settlement of this case. While Plaintiffs agree with the Court's rulings, Plaintiffs face the substantial risk that this Court's ruling on the GMWL calculation methodology would be reversed on appeal.[7]

The possibility of reversal of this Court's rulings on the GMWL calculation methodology, as well as with respect to Defendants' "no piggybacking" arguments

---

[6] As a general proposition, a miniscule number of class members were paid less than the applicable Georgia minimum wage if their compensation is calculated using the workweek-based methodology advocated by Defendants.   Defendants' expert calculated Plaintiffs' best-case scenario for liability under Defendants' calculation methodology as being approximately $20,000 (or less).

[7] This is particularly so given the U.S. Supreme Court's Ruling in *China Agritech v. Resh*, 138 S. Ct. 1800 (2018), decided in June of this year, after the Parties reached tentative agreement on a settlement, application of which could result in the mandatory decertification of the Plaintiff class in this case.

8

makes this an "all or nothing" case for Plaintiffs with respect to recovery. Given the inherent uncertainty about how the merits of Plaintiffs' claims would ultimately be resolved, and whether the case can proceed as a class action, Plaintiffs believe this settlement is in their best interests at this stage of the proceedings.

### E. The Parties' Class Stipulation.

Based solely upon the Court's prior rulings, including, without limitation, those contained in the June 8 Order, September 21 Order, and its denial of Defendants' request for an interlocutory appeal, the Parties agreed that a common legal question existed under the present procedural posture of this case, warranting class certification. For that reason, the Parties conditionally stipulated to litigate and mediate this as a class action case, reserving all rights to challenge the Court's prior rulings, on summary judgment, appeal, by certification to the Georgia Supreme Court, or otherwise. *See* [Dkt. No. 72].

On April 5, 2017, the Parties entered into a Conditional Stipulation Regarding Class Certification ("Class Stipulation") [Dkt. No. 73], conditionally defining and certifying a class of SHCS employees for purposes of the Action, which was approved by order of the Court on April 10, 2017 [Dkt. No. 74]. The stipulation was intended to avoid unnecessary time and expense and to promote judicial efficiency based solely upon this matter's current procedural posture.

**F.     Settlement negotiations.**

On August 16, 2017, the Parties engaged in a mediation before Hunter Hughes, a highly regarded and experienced wage and hour class-action mediator, and over the course of the next several months negotiated a settlement of this case with Mr. Hughes's assistance and through multiple in-person and telephonic settlement discussions and exchanges of settlement information. The Parties have reached an agreement to settle, which is intended to fully and finally resolve all claims as to the Named Plaintiffs and the Class Members in the Action.

**II.     The terms of the Parties' settlement.**

The Settlement Agreement filed herewith contains all of the terms of the Parties' settlement, and reference to that document here.   For summary, however, key terms of the settlement are described below.

**A.     Class definition.**

The individuals covered by the settlement are SHCS's employees subject to the GMWL who worked in Georgia during the applicable potential liability period and who meet all of the following criteria:

(1)     Were (a) classified by SHCS as an hourly, non-exempt employee pursuant to the FLSA or (b) classified by SHCS as an exempt "companion" pursuant to 29 U.S.C. §213(a)(15);

10

(2)     Cared for multiple clients during their workday on at least one occasion during the Potential Liability Period;

(3)     During such occasions where the employee cared for multiple clients during a single work day during the Potential Liability Period, drove from one client's residence to another client's residence during such workday; and

(4)     Were not assigned an hourly wage by SHCS specific to their Drive Time during the Potential Liability Period.

The Settlement Class expressly <u>excludes</u> any participant in the prior *Geddis/Ford* cases who did not meet this criteria after July 3, 2012 (because they released all such claims as of that date).  Based upon the definitions above, the Parties estimate that the settlement class consists of approximately 9,400 employees.

The class period is from August 17, 2008 through the date of preliminary approval, except as to the *Geddis/Ford* Participants, for whom the Class Period shall be July 4, 2012 to December 31, 2015.    These are the dates previously established by the Court based upon the Parties' prior briefings.

**B.     Settlement Amount and claims process.**

The settlement is a "claims-made" settlement, with a maximum total payout by Defendants (inclusive of all awards, incentive awards, interest, attorney's fees,

11

costs, taxes, and all other possible monetary amounts) of $7,727,500.00. The Settlement Administrator will send notice out to all potential class members via first-class U.S. mail using updated address information. To exclude themselves from the settlement and the application of the Settlement Agreement, a Settlement Class Member must return a timely and completed Exclusion Form to the Settlement Administrator. Similarly to recover monies pursuant to the settlement, class members must timely submit a completed claim form.

### C.  Release.

A release of all wage-hour claims, past, present, or future, against Defendants will be executed for the potential liability periods and in exchange for the consideration provided pursuant to the Settlement Agreement with respect to the Named Plaintiffs and all class members who do not specifically excluded themselves from the settlement, as described above. Additionally, the Named Plaintiffs will execute a general release of all claims.

### D.  Enhancement awards and attorney's fees.

Class Counsel intends to seek approval from the Court for a reasonable enhancement award to the Named Plaintiffs, in a total aggregate amount not to exceed Thirty Thousand Dollars ($30,000), with each of the four Named Plaintiffs receiving $7,500 of that amount. Further, Class Counsel will request that the Court

award them reasonable attorneys' fees in an amount up to and including Two Million, Five Hundred Seventy-Five Thousand, Eight Hundred Thirty-Three Dollars and Thirty-Three cents ($2,575,833.33), and incurred litigation expenses not to exceed $60,000, to be divided among Class Counsel as they may agree.

## III.    The Court should preliminarily approve the Parties' settlement.

Federal courts strongly favor settlements, especially in class actions and other complex matters where the costs, delays, and risks of continued litigation might overwhelm any potential benefit the class could hope to obtain. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (noting that "our judgment is informed by the strong judicial policy favoring settlement"); *see also* 4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) (citing cases). The traditional means for handling claims like those at issue here through individual litigation would unduly tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Settlement Class Members, be impracticable. Thus, the proposed settlement is the best vehicle in achieving recovery for the Settlement Class.

The Manual for Complex Litigation describes a three-step procedure for approval of class action settlements, which is used by courts in this Circuit:

    (1)    preliminary approval of the proposed settlement at an informal hearing;

  (2)  dissemination of mailed and/or published notice of the settlement to all affected class members; and

  (3)  a "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.63 (2008).

## A.  Legal standards for preliminary approval.

Fed. R. Civ. P. 23(e) requires parties to obtain Court approval of any class action settlement agreement. The Court may approve the settlement "only after a hearing and on a finding that the settlement . . . is fair, reasonable, and adequate" and not the product of collusion. Fed. R. Civ. P. 23(e)(2); *Adams v. Sentinel Offender Servs., LLC*, No. 1:17-cv-2813-WSD, 2018 U.S. Dist. LEXIS 78841, *20 (N.D. Ga. May 10, 2018) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). In considering the settlement, the district court may rely upon the judgment of experienced counsel for the Parties. *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. Appx. 429, 434 (11th Cir. 2012) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). The Eleventh Circuit has identified the following factors to evaluate whether a settlement agreement is fair, reasonable and adequate: (1) the likelihood of success at trial; (2) the range of possible recovery;

(3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Id.*; *Dikeman v. Progressive Express Ins. Co.*, 312 F. Appx. 168, 171 (11th Cir. 2008) (quoting *Bennett*, 737 F.2d at 986). Applying these six factors, the Parties' Settlement Agreement is fair, reasonable, and adequate in this case.

### 1. The outcome of this case is highly uncertain (factor #1)

As noted above, Plaintiffs face the substantial risk that this Court's ruling on the GMWL calculation methodology will be reversed. If that occurs, they will get virtually nothing. The same is true if the Eleventh Circuit agrees with Defendants with respect to their "no piggybacking" arguments.

### 2. The settlement is solidly within the range of possible recovery and is fair, adequate, and reasonable (factors #2 and #3).

The Parties exchanged confidential expert analyses during mediation regarding the Plaintiffs' potential recovery in this case.   While the Parties' disagree as to what the potential damages might be, the settlement here is well within the middle of the range of Plaintiffs' potential damages related to their Drive Time. To measure potential exposure, Defendant's expert economist estimated the drive

time of each potential class member using a methodology that Plaintiffs generally found to be acceptable and reliable. The Parties shared and considered various potential outcomes based upon those calculations, and negotiated accordingly.

Given the uncertainties as to outcome, Plaintiffs recovery could be reduced to virtually zero should Defendants ultimately prevail. Courts have favored granting approval under similar circumstances. *See Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1218 (11th Cir. 2012); *Gray ex rel. Alexander v. Bostic*, 720 F.3d 887, 892 (11th Cir. 2013).

### 3. Continued litigation of this matter would be lengthy, expensive, and uncertain (factor #4).

This case has already been litigated for over five years, and it would take several additional years to reach a final ruling. Regardless of the outcome in this Court, the non-prevailing party would almost certainly appeal. Given the nature of the issues, it is possible that the GMWL calculation methodology questions would be submitted to the Georgia Supreme Court, either by this Court or by the Eleventh Circuit. That process would be lengthy and expensive.

Approval of the Settlement Agreement would eliminate that uncertainty and avoid the time and expense necessary to litigate a case of this magnitude. This case is in its fifth year of litigation, the facts in this case are well developed, and questions of law have been extensively briefed. These factors all favor approval.

16

*See Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) ("The stage of the proceedings at which a settlement is achieved is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation.").

### 4. Currently, no opposition to the settlement exists (factor #5).

There is no known opposition to this settlement. Class members who are aware of the potential settlement have received the information favorably. Plaintiffs' claims have sufficiently vetted to permit a comprehensive and fair settlement.

### 5. This case was settled at an appropriate stage of these proceedings (factor #6).

Finally, the Settlement is the product of good-faith, arm's-length negotiations with the assistance of a nationally renowned and experienced neutral mediator after five years of hard-fought litigation. The Settlement has been thoughtfully negotiated and no evidence of fraud or collusion exists influencing the Parties. The time and effort spent on negotiation strongly indicate that the negotiation was reached without collusion, but rather voluntarily in light of the risk to all Parties. "[T]he Eleventh Circuit has held that a court should certify a settlement if it is fair, reasonable, adequate and free of collusion." *Columbus*

*Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 559 (N.D. Ga. 2007) (citing *Bennett*, 737 F.2d at 985-86).

### B.    All class requirements have been met.

As noted above, the Parties previously stipulated to class certification, and the Court approved it.    To summarize, however, all Rule 23 requirements are satisfied here.

### 1.    All Rule 23(a) requirements are satisfied.

In addition to making a preliminary showing of reasonableness, a plaintiff must also meet the requirements of Fed. R. Civ. P. 23 to obtain preliminary approval.  *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 659 (S.D. Fla. 2011) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Rule 23(a) grants class action status to cases in which: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

### a.    Numerosity.

The Class – estimated at over 9,400 individuals – is sufficiently numerous that joinder is impracticable. *See Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878

(11th Cir. 1986).

###### b.   Commonalty.

The test for commonality in questions of law and fact is qualitative as opposed to quantitative, meaning that one significant issue common to the class may be sufficient to warrant certification. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (holding that "'commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members'"); *see In re Checking Account*, 275 F.R.D. at 659 (holding that commonality was satisfied where liability depended on "class-wide policies and practices"). These requirements should be given a "liberal construction." *Freeman v. Motor Convoy, Inc.*, 409 F. Supp. 1100, 1113 (N.D. Ga. 1976) (explaining that "a broad definition of commonality of interests and typicality of claims is desirable"). As noted above, common issues of law exist based upon the Court's prior rulings in this case, and the Parties have so stipulated.

###### c.   Typicality.

Claims are "typical" if there is "a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Typicality, however, does not require "identical claims or defenses." *Id.* Rather, "a

19

factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of the other members of the class." *Id.*; *see also In re Checking Account*, 275 F.R.D. at 660 (finding typicality satisfied where named plaintiff's claims concerned same policies and practices, arose from the same legal theories, and alleged the same types of harm and entitlement to relief).

The Named Plaintiffs assert similar "Drive Time" claims to the remainder of the class.   All Class Members would be required to satisfy the same elements of those claims under the same legal theories. Typicality is present as well.

### d.      Adequacy of representation.

The Named Plaintiffs and their Counsel adequately represent the proposed Settlement Class. The adequacy of representation requirement is satisfied if: (1) Plaintiff is represented by qualified and competent counsel; (2) Plaintiff's interests do not conflict with the interests of the proposed Class Members; and (3) Plaintiff has sufficient personal integrity to fulfill the role of class representative. See *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987).

(i)      Plaintiffs are represented by qualified and competent counsel.

All counsel have decades of experience in complex litigation in state and federal courts.   As this is the only known litigated case involving GMWL, class

counsel (along with defense counsel) are beyond peradventure the most experienced attorneys in the world on the subject at hand.  Regarding the historical qualifications of class counsel, *see generally* Brief in Support of Unopposed Motion for Appointment of Co-Lead Class Counsel [Dkt. No. 75] and Declarations A through D appended thereto.  Briefly, we note here the broad outlines of counsel's qualifications.

Attorney J. Derek Braziel has long experience in collective and class actions involving wage and hour issues. Mr. Braziel graduated *magna cum laude* from Baylor University in 1992. He received a J.D. degree from the University of Virginia Law School in 1995.  He has been lead counsel in over 300 wage and hours cases in federal courts in more than 15 states.  He has been Board Certified in Labor and Employment Law by the Texas Board of Legal Specialization since 2002. He has litigated hundreds of wage-and-hour cases in federal court. The vast majority of those cases involved mass litigation, either as an FLSA collective action, a Fed. R. Civ. P. 23 class action, or a hybrid of the two.

Attorney Geoff Pope is a shareholder at the law firm Pope & Howard, P.C. in Atlanta, GA. He has been licensed to practice law in Georgia since 1993. He holds a B.A. with high honors from the University of Georgia (1990) and a J.D. *cum laude* from the University of Georgia (1993). He is admitted to practice before

all state and federal courts in Georgia as well as the United States Court of Appeals for the 11th Circuit. He is a trial attorney specializing in catastrophic personal injury and wrongful death as well as other types of complex litigation and trial work. He has represented hundreds of individual clients, including employees, employers, insurance companies, business corporations, victims of negligence and fraud, and others. He has represented and counseled clients in a wide variety of matters, including cases involving wage and hour, ERISA, and employment discrimination.

Attorney Marc Howard is a shareholder at the law firm Pope & Howard, P.C. in Atlanta, GA. He has been licensed to practice law in Georgia and Virginia since 1993. He holds a B.A. from the University of Virginia (1988) and a law degree from the University of Georgia (1993). He is admitted to practice before the trial and appellate courts of Georgia and Virginia, the United States Court of Appeals for the 11th Circuit Court of Appeals, and United States District Courts in Virginia, Georgia, and Florida. He is a trial attorney specializing in the areas of personal injury, wrongful death, and complex litigation and trial work.  He has served on the Board of Governors for the State Bar of Georgia since 2010. He is past Chair of the Civil Justice PAC of GTLA, Inc., and a former member of the Executive Committee of the Georgia Trial Lawyers Association (GTLA). He has

chaired the amicus and education committees for GTLA and has chaired the Advisory Committee on Legislation for the State Bar of Georgia.  He has represented hundreds of individual clients, including employees, employers, insurance companies, business corporations, victims of negligence and fraud, and others. He has represented and counseled clients in a wide variety of employment-related matters, including cases involving wage and hour, ERISA, employment discrimination, whistle-blower/qui tam and civil RICO.

Attorney Benjamin Terry is a trial lawyer specializing in the areas of workers compensation, personal injury, employment law, and commercial disputes. He has practiced law in Metro Atlanta for 36 years, representing over seven hundred individual clients, including employees, employers, insurance companies, business corporations, victims of negligence and fraud, and others. He has represented and counseled clients in a wide variety of complex matters, including cases involving the Clean Water Act, hostile corporate takeovers, nursing home negligence, predatory lending class action, racial profiling, intellectual property, ERISA, and civil RICO. He is admitted to practice in the Supreme Court of the United States, the trial and appellate courts of Georgia, the United States Court of Appeals for the 11th Circuit and 5th Circuit, and all United States District Courts of Georgia.  He has been counsel in 38 reported decisions

before the Georgia Supreme Court and Court of Appeals, and the 11th Circuit Court of Appeals.

Named Plaintiffs' interests do not conflict with the interests of the proposed Class Members, and are in fact on "all fours" with the interests of the proposed Class Members. All four named plaintiffs are part of the "direct care" staff which comprises the entirety of the conditionally certified class.

Plaintiffs have sufficient personal integrity to fulfill the role of class representative. Class counsel certify there are no known defects in the personal integrity of the named Plaintiffs. All four have demonstrated commitment to the case, cooperation with class counsel, and appreciation for their representative roles throughout this lengthy litigation.

### 2.  All Rule 23(b) requirements are satisfied.

Plaintiffs also satisfy the requirements of Rule 23(b)(3). *Karhu v. Vital Pharms, Inc*., 621 Fed. Appx. 945 (11th Cir. 2015). "[T]he focus of Rule 23(b)(3) is on the predominance of common questions." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013). Common issues predominate "if they have a 'direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Vega v. T-Mobile USA,*

*Inc.,* 564 F.3d 1256, 1270 (11th Cir. 2009); *see also Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009) (noting common questions predominate "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."). The Court must "take into account the claims, defenses, relevant facts, and applicable substantive law" in determining whether common question predominate. *Klay v. Humana, Inc*., 382 F.3d 1241, 1254 (11th Cir. 2004).

In this case, under the current procedural posture, the existence of common questions of law and fact have already been established to predominate over individualized issues. A common legal question regarding the minimum wage calculation methodology under the GMWL – and the applicability of Defendants' "no piggybacking" arguments, is what determines whether any Class Member's claim has merit and whether this matter can proceed on a class basis.  If every Class Member brought an individual action, each would attempt to prove essentially the same facts, and the same legal arguments would arise on both sides. Here, the Class Members' claims "that are subject to generalized proof predominate over those that are subject to individualized proof", which establishes the common question requirement of Rule 23(b)(3).  *See Kubiak v. S.W. Cowboy,*

*Inc.*, No. 3:12-cv-1306, 2014 U.S. Dist. LEXIS 80225, *18 (M.D. Fla. June 12, 2014).

## **CONCLUSION**

The Parties have settled this long-lasting and hard fought case through informed, arms-length negotiating with an experienced mediator. The settlement is balanced and fair to class members. All requirements of Rule 23(a) and 23(b) are satisfied. For those reasons, Plaintiffs move the Court to preliminarily approve the Parties' settlement.

*[signatures on following page]*

26

This 26th day of October, 2018.

Consented to:

LEE & BRAZIEL, LLP

HAWKINS PARNELL
     THACKSTON & YOUNG LLP

*/s/ J. Derek Braziel*
_____

Benjamin H. Terry
Law Offices of Benjamin H. Terry, P.C.
312 Crosstown Road, #355
Peachtree City, Georgia 30269

J. Marcus Howard
Geoffrey E. Pope
Pope & Howard, P.C.
945 East Paces Ferry Road
Suite 2525, Resurgens Plaza
Atlanta, Georgia 30326

J. Derek Braziel
Lee & Braziel, LLP
1801 North Lamar Street, Suite 325
Dallas, Texas 75202
2340 E. Trinity Mills, Ste. 300
Carrollton, TX 75006
214.390.5715
469.277.3365 (fax)

**Counsel for Plaintiffs**

*/s/ Matthew A. Boyd*
_____

Ronald G. Polly, Jr.
Georgia Bar No. 583264
rpolly@hptylaw.com
Matthew A. Boyd
Georgia Bar No. 027645
mboyd@hptylaw.com
303 Peachtree Street, N.E.
Suite 4000
Atlanta, Georgia 30308
Telephone:   (404) 614-7400
Facsimile:    (404) 614-7500

**Counsel for Defendants**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |  |
|---|---|---|
| **MARGARET ANDERSON,** | ) | |
| **MARY DIXON, LATASHA WILLIAMS,** | ) | |
| **And KYONNE SUTHERLAND,** | ) | |
| ***Individually and on behalf of all Others*** | ) | |
| ***Similarly situated,*** | ) | **CIVIL ACTION FILE** |
| | ) | **NO.: 1:13-cv-00840-LMM** |
| **Plaintiffs,** | ) | |
| | ) | |
| **SOUTHERN HOME CARE** | ) | |
| **SERVICES, INC., and** | ) | |
| **RES-CARE, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## CERTIFICATE OF SERVICE

This is to hereby certify that I have this day filed the foregoing **CONSENT MOTION FOR PRELIMINARY APPROVAL AND BRIEF IN SUPPORT** with the Clerk of the Court via the ECF filing system, which will automatically send email notification of such filing to all attorneys of record in this case.

This 26th day of October, 2018.

/s/ Matthew A. Boyd
_____
Ronald G. Polly, Jr.
Georgia Bar No. 583264

28