IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISON

MARGARET ANDERSON, et al.,     )
Individually and on behalf of all     )
Others similarly situated,     )
     )
     Plaintiffs,     )
v.     )     CIVIL ACTION FILE NO.
     )     1:13-cv-00840-LMM
SOUTHERN HOME CARE     )
SERVICES, INC., and RES-CARE, INC.,     )
     )
     Defendants.     )
_____)

## PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVE FEES AND SUPPORTING BRIEF

## INTRODUCTION

Having successfully negotiated a settlement for the class they represent,

Class Counsel hereby request the Court award to them the sum of $2,575,833.33 to

cover their fees and $60,000 to cover incurred expenses over six years of litigation,

as provided by the settlement. While not binding on the Court, the parties'

agreement is entitled to substantial weight where, as in this case, the fee

negotiations were conducted at arm's length and only after the liability aspects of

the litigation were adjudicated by this Court. This is particularly true because no

class member has objected to the settlement; the fee negotiations occurred after the

merits of the litigation were settled; and the fee award will be paid by Defendants, not the members of the class.

The settlement of this case will conclude almost 12 years of hotly-contested litigation spanning three different lawsuits in federal and state court over the degree to which Defendants must compensate their personal care employees for the time spent driving to and from the homes of the various clients. This particular case was filed in early 2013, arguing that the Georgia Minimum Wage Law (GMWL) applied to members of the class and required Southern Home Care Services, Inc. and Res-Care, Inc. ("Defendants") to pay them $5.15 for each hour spent driving between clients' homes. To counsel's knowledge, this case is the first time anyone has successfully recovered under the GMWL.[1]   Not surprisingly, it featured numerous motions and novel legal issues, two of which required a trip to the Georgia Supreme Court for two issues of first impression.

---

[1] Plaintiffs are aware of a small number of cases where a plaintiff sought to recover under the GMWL, but none appear to have been successful. See, e.g., Crosby v. East West, Inc., 278 Ga. App. 329, 330 n.3 (2006)(claim denied by trial court and not appealed); Hajiani v. Perseus Investments, Inc., 2012 WL 3241713 (N.D. Ga., August 7, 2012) (refusing to exercise supplemental jurisdiction over GMWL claims); Hajiani v. Perseus Investments, et al, Superior Court of Cobb County, Civil Action No. 13-1-6820-51 (claims dismissed for Plaintiff's discovery violations); Keys v. Akal Security, Inc., 2008 WL 750354 (D. Kansas, March 14, 2008), *3 (motion to dismiss GMWL claims not contested); but see Sanders v. Kave Enterprises, LLC, 2008 WL 275746 (M.D. Ga., Jan. 30, 2008)(GMWL claims asserted along with a litany of other employment-related claims including FLSA minimum wage and overtime, breach of contract, unjust enrichment, etc.; but an adjudication of the GMWL claims does not appear prior to dismissal so it is theoretically possible that this case involved some level of recovery).

In addition to the legal issues, the case involved extensive expert work and analysis of the daily driving routes of all 9,166 class members from August 17, 2008 forward.  After almost six years of litigation, Defendants agreed to the following:  (1) hiring a third-party administrator to create a database identifying Class Members who were not paid for their drive time and determining how far they drove, and (2) paying the Class members an amount out of the $7,727,500.00 fund, calculated using mileage driven data and data regarding the commuting speed over the routes and at the times involved here.  To emphasize what a good deal Class Counsel negotiated, Class members are receiving payments of approximately 160% of the amount they would have received in wages had Defendants complied with GMWL in the first place.

The amount sought by Class Counsel is reasonable under the "percentage of the benefit" method adopted by the Eleventh Circuit in ***Camden I Condominium Ass'n, Inc. v. Dunkle, 946 F.2d 768 (11th Cir. 1991).*** The requested fee is one-third of the total settlement fund – an amount typical for contingency based work – and substantially less than the 40% fee agreements executed by the Class representatives. The requested fee is also justified under the lodestar/multiplier method used as a cross-check. Class Counsel have spent more than 3,400 hours on the case, valued in excess of $1.8 million.

The Court should also approve enhancement awards of $7,500.00 to each of the four lead Plaintiffs for their service as class representatives. Such an award is justified both legally and factually. Further, the award will be paid by Defendants, so it will not diminish the compensation received by any class member.

In support of this application, Plaintiffs submit Declarations of J. Derek Braziel, Geoffrey E. Pope, J. Marcus Howard, and Benjamin W. Terry. [attached as Ex. A-D]

## FACTS

### A.     The background to this action.

Plaintiffs filed this specific action back in early 2013 following the settlement of the *Geddis v. ResCare* and *Ford v. ResCare* matters. As the Court knows, *Geddis* was an FLSA collective action where Plaintiffs' attempted to assert claims under the GMWL, but the Northern District refused to exercise supplemental jurisdiction over the GMWL claims. The *Ford* case was the resultant attempt to assert the GMWL claims on behalf of essentially the same class as is represented here. However, the individual *Ford* plaintiffs settled at the same time as the *Geddis* case settled. Since no class had been certified in *Ford* and many former employees of ResCare had not opted into the *Geddis* collective action, some 9,166 employees of ResCare remained unaffected by the settlements of the *Geddis* and *Ford* cases. [Ex. A (¶ 10), Ex. B-D (¶4)

4

Four of those present and former employees had previous contact with Class Counsel in connection with the investigation of the *Geddis* claims, but failed to submit paperwork joining that collective action. They approached Class Counsel and inquired if any remedy remained for them. Class Counsel investigated the viability of claims under GMWL. Class Counsel traveled to meetings with the four lead Plaintiffs in the instant litigation. All four hired Class Counsel on a contingency fee basis and agreed to act as class representatives. Id.

Class Counsel filed a Complaint in DeKalb County Superior Court on February 15, 2013, and Defendants removed the case to this Court.  For the next five-and-a-half years, the parties litigated the case intensely.

**B.      The initial motions to dismiss and the trip to the Georgia Supreme Court.**

Defendants moved for judgment on the pleadings (Docket 21) on six different grounds, including the application of the GMWL to Class members, statute of limitations, and federal preemption.  On June 2, 2014, Class Counsel filed a comprehensive response opposing Defendants' motion. (Docket 22). The Court directed supplemental briefing on these issues by Class Counsel.  (Docket 25; Docket 26). After reviewing the pleadings filed by Class Counsel, the Court entered an order certifying two questions to the Georgia Supreme Court regarding the extent of coverage under GMWL.

This case is the only case where the Georgia Supreme Court has addressed the substance of the GMWL, and Plaintiffs losing either issue would have resulted in judgment for the defendants on the entire case.  Given the lack of precedent and the all-or-nothing nature of the issues, Class Counsel worked extensively to craft arguments that would appeal to individual members of the Georgia Supreme Court. This effort required a solid understanding of the judicial philosophies of the various justices and significant time preparing the briefs and oral argument.  [Ex. B-D (¶ 5)] On November 23, 2015, the Georgia Supreme Court issued its decision unanimously in favor of Class Members. ***Anderson v. Southern Home Care Services, Inc., 298 Ga. 175 (2015)***.

## C.    Discovery and the "Averaging" Issue.

When the case returned to this Court, the Court directed additional briefing on matters relating to the statute of limitation issues raised by Defendants in their motion to dismiss. In addition, Defendants argued that the Court should limit discovery because the Class Members' "average" pay exceeded the $5.15 GMWL threshold.  The Court directed briefing on the "averaging" issue as well.

Class Counsel devoted considerable time to research and brief preparation on both issues.  (Docket 37 and 39). On June 8, 2016, the court entered an order on the statute of limitation allowing most of Plaintiffs' claims to proceed. (Docket 40). On September 21, 2016, the Court denied Defendants' effort to limit discovery and

6

held that the "averaging" method was not appropriate under the GMWL.  (Docket 41) After additional litigation and numerous motions on precisely when the statute of limitations applied ran on Class Members' claims, the Court ultimately held that discovery was appropriate for claims from August 17, 2008 through October 15, 2015. (Docket 71) At this point, the case moved into a court-approved discovery phase, which focused primarily on issues of damage computation.

Class Counsel had already gained lots of information from the discovery conducted in the *Geddis* matter, but also served (and responded to) comprehensive discovery requests in this case.  Indeed, Defendants produced thousands of documents for review by Class Counsel. Class Counsel devoted significant time to discussions with Defense Counsel regarding a stipulation of class certification. The parties reached an agreement, and the Court approved the stipulation of class certification. (Docket 74).

### D.    The Damages Models and the Mediation.

With the Court having decided most of the legal issues applicable to Class Members' claims, the parties agreed to attempt mediation. Defendant provided Class Counsel with all of the data relating to each Class Member's travel time, and the parties agreed to administratively close the case until the mediation effort could be attempted.  Although the formal case was administratively closed, Class Counsel's efforts intensified significantly.  [Ex. A ¶ 14, Ex. B-D (¶ 6)]

7

The data included payroll, mileage, and worksite location (i.e., residence address of ResCare client).  The data was converted to Excel spreadsheets, which are program-limited to *one million* data rows. The data involved here was so copious that numerous data files had to be transferred to different spreadsheets as the consisted of several million rows, and each row contained several different data points. Class Counsel worked extensively with the data to model damages under a variety of different scenarios (e.g., different MPH, different amounts of time in addition to driving, etc.). Class counsel hired a forensic accountant with expertise in statistics to help prepare damages models for the various scenarios.  [Ex. A ¶ 14, Ex. B-D (¶ 6)]

Defendants produced a damage model based on Google Maps applications, and Class Counsel had to evaluate this damages model. Specifically, Class Counsel devoted extensive time to researching modern mapping applications and conferred with two different computer mapping experts regarding the validity of claims by Defendants' expert. Id.

In addition to damages modeling and working with reams of data, Class Counsel also conducted significant investigation into the typical work habits of Class Members.[2]  In the lead-up to the mediation as the parties exchanged damages

_____

[2] For instance, the typical length of time spent at a client's home after the "billed portion" was complete could impact the damages models significantly since ResCare acknowledged it only compensated Class Members for the

8

models, Defendants made numerous assertions to Class Counsel regarding their business model and how it affected the "windshield time" covered by GMWL. Class Counsel interviewed numerous ResCare employees or former employees to determine what was actually happening "on the ground" with real employees, in real-time. In addition to the lead Plaintiffs, Class Counsel interviewed numerous other ResCare employees and former employees, some of these were precluded from the Class by their participation in the predecessor *Geddis* litigation. As a result, Class Counsel conducted scores of interviews with lead Plaintiffs, class members, and other ResCare employees.[3] Id.

The mediation took place on August 16, 2017 at Defendants' corporate office in Louisville, Kentucky. The neutral was Hunter Hughes, one of the most respected mediators nationwide in employment-related litigation. The mediation was unsuccessful, and Mr. Hughes continued working with the parties for months

---

"billed portion" of the time. Other such issues included whether Class Members went home during gaps in the day and whether they typically travelled from home to a ResCare office or to a Client's home. Others included record-keeping practices in connection with class members' claims for mileage reimbursement and the scheduling and driving patterns during the course of their employment. These items represent just some of the issues Class Counsel investigated with Class Members.

[3] Sometimes, these interviews were scheduled. Often they resulted from individuals calling Class Counsel because they had learned of the litigation by word-of-mouth. These phone calls could come at any time of the day. In each of these, Class Counsel would review a pending list of fact issues and note the responses. Almost all of these interviews were conducted by Class Counsel themselves instead of support staff.

after the mediation in the hopes of achieving a resolution.  Although the gap

narrowed, Mr. Hughes ultimately declared an impasse. [Ex. A (¶ 17), B-D (¶ 7)]

The Court reopened the case and approved the form of class notice on

February 15, 2018. (Docket 86). However, prior to the deadline for mailing notice,

the parties began to discuss settlement again. The parties obtained extensions of

time for the mailing of class notice so that settlement discussions could continue.

(Docket 87, 88, 90, 91).

Over the six months preceding August 28, 2018, the parties had extensive

discussions regarding settlement, including in-person meetings between Class

Counsel Braziel and ResCare representatives in Houston, Texas. Finally,

approximately one year after the Louisville, Kentucky mediation, the parties

agreed to the terms of a settlement.  Class Counsel worked with Defense Counsel

in the preparation of a joint motion for preliminary approval, which the Court

granted on November 6, 2018. (Docket 95).

This has been a labor-intensive case. Class Counsel has continuously been

involved in investigation and research of issues of first impression. The size of the

class and the amount of data involved in damages calculations has been

monumental. Class Counsel have devoted roughly 3,460 hours of attorney time

over the course of six years. [Ex. A (¶ 23), B-D (¶ 9)] Class Counsel are all

experienced trial lawyers, and, while not all do hourly work with sufficient

10

frequency to determine their market hourly rate, a conservative estimate of the rate would be $500 an hour with Mr. Braziel at $650 an hour.  [Ex. A (¶ 21), B-D (¶ 9) Under any test available, Class Counsel's request for fees is appropriate and reasonable.   Plus, we should note that reducing Class Counsel's fee request is unlikely to help Class Members because their compensation is not dependent on the amount of fees.  Instead, reducing Class Counsel's fee request will only benefit Defendants.  [Ex. A, ¶ 19]

ARGUMENT AND CITATION OF AUTHORITY

**A.   The Court Should Give Great Weight to the Parties' Agreement.**

This Court is not bound by the parties' agreement, and, indeed, has a duty to independently evaluate the requested fee. Nonetheless, the agreement is entitled to deference because it resulted from adversarial negotiations after the merits were decided. ***See, e.g., Strube v. Am. Equity Inv. Life Ins. Co., 2006 WL 1232816 at *2 (M.D. Fla. May 5, 2006); Elkins v. Equitable Life Ins. Co., 1998 WL 133741 at *34 (M.D. Fla. Jan. 27, 1998); Ingram v. Coca-Cola Co., 200 F.R.D. 685, 695 (N.D. Ga. 2001).*** As has been noted:

> The Court finds that the fee and expense negotiations were conducted at arm's length, only after the parties had reached agreement on all terms of the Settlement. There is no evidence in this case that the Settlement, or the fee and expense agreement, was in any way collusive. Under these circumstances, the Court gives great weight to the negotiated fee in considering the fee and expense request.

11

Such agreements between plaintiffs and defendants in class actions are encouraged, particularly where the attorneys' fees are negotiated separately and only after all terms of the settlement have been agreed to between the parties. *See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)* (noting that negotiated, agreed upon attorneys' fees are the "ideal" toward which the parties should strive and stating that "[i]deally, of course, litigants will settle the amount of a fee").

*Manners v. Am. Gen. Life Ins. Co., 1999 WL 33581944 at *28 (M.D. Tenn. Aug. 11, 1999)* (some internal citations omitted); *see also, e.g. Johnson v. Georgia Highway Express, Inc., 448 F.2d 714, 720 (5th Cir. 1974)* ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.") Many reasons support deferring to the parties' agreement in this case. First, the reality is that there is no one "reasonable fee" mandated by applicable law. The notion of reasonableness encompasses a range of numbers about which there can be a legitimate difference of opinion. So long as the requested fee is one that the Court agrees is within the range of what is reasonable, it should be approved.

Second, the agreement reflects the economic realities of the marketplace. The competing pressures on the parties served as a substitute for the incentives that normally drive private fee negotiations, ensuring that the agreed upon fee did not constitute a windfall. The agreement thus is worthy of judicial deference. See

generally *In re Continental Illinois Sec. Lit., 962 F.2d 566, 572-73 (7th Cir. 1992)* (noting that the court's objective is to award a fee providing the lawyers what they would have achieved through arm's length bargaining with a paying client); *Strube, 2006 WL 1232816 at \*2*. Third, reducing the requested fee would discourage competent attorneys from handling class actions. In agreeing to the proposed award, Class Counsel gave up the right to seek a larger amount and effectively tied the hands of the Court, precluding it from awarding a higher fee even if justified. Under such circumstances, if courts routinely cut the amounts agreed upon by the parties, the inevitable result will be downward pressure on fee awards and thus fewer competent lawyers willing to undertake class actions.

## B.    The Requested Fee is Reasonable under the Common Fund Doctrine

### I.    <u>The Common Fund Doctrine and Eleventh Circuit Law.</u>

Courts have long recognized the common fund doctrine, under which attorneys who create a recovery benefitting a group of people may be awarded their fees and costs from the recovery. *See, e.g., Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980).* The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts," *In re Gould Sec. Lit., 727 F.*

*Supp.1201, 1202 (N.D. Ill. 1989).* The doctrine also ensures that those who benefit from a lawsuit are not "unjustly enriched." *Boeing Co. v. Van Gemert, 444 U.S. at 478.*

In a case such as this one, the Eleventh Circuit has directed that the fee be based upon a percentage of the class benefit. *Camden I, 946 F.2d at 774-75.* A court has a great deal of discretion in choosing the proper percentage. "There is no hard and fast rule … because the amount of any fee must be determined upon the facts of each case." *Id. at 774.* The court should look at such factors as the time required reaching a settlement, whether there are any substantial objections, the economics of a class action, the criteria set out in *Johnson v. Georgia Highway Express,* and any other "unique" circumstances*.* Id. at 775.

## II.    The Requested Award is in Line with Camden I.

The benefit to the class in this case consists of the payments for which class members are eligible based on data showing miles driven between work locations, and the time driven shown by Google Maps algorithms. This data is used to calculate each class member's eligibility for a specific percentage of the settlement fund allocated to those claims.  Also included in the class benefit are the fees, expenses, and administrative costs to be paid by Defendants. *See, e.g., Manual for Complex Litigation § 21.7 at 335 (4th ed.)* ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney's fees and

14

expenses… the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class … The total fund could be used to measure whether the portion allocated to the class and to attorney fees is reasonable … .").[4] The total of these benefits is $7,727,500.00. The requested attorney fee award is one third of this sum.[5]

Courts in this circuit routinely approve fees based upon similar percentages. *See, e.g., Waters v. Int'l Precious Metals Corp., 190 F.3d 1291 (11th Cir. 1999) (33 1/3 percent); Columbus Drywall & Insulation, Inc. v. Masco Corp., 2012 WL 12540344 at \*2 and n. 2 (N.D. Ga. Oct. 26, 2012)* (awarding fee of 33 and 1/3 percent and listing other similar cases); *Morefield v. NoteWorld, LLC, 2012 WL 1355573 at \*5 (S.D. Ga. Apr. 18, 2012)* (one-third); *Wolff v. Cash 4 Titles, 2012*

---

[4] Numerous decisions recognize that fees paid separately by a defendant are included in the class benefit. *See, e.g., Poertner v. Gillette Co., 618 Fed. Appx. 624, 628 (11th Cir. 2015); Johnston v. Comerica Mtg. Corp., 83 F.3d 241, 245-46 (8th Cir. 1996); In re Managed Care Litig., 2003 WL 22850070 at \*6 (S.D. Fla. Oct. 24, 2003); David v. Am. Suzuki Motor Corp., 2010 WL 1628362 at \*8 n.14 (S.D. Fla. Apr. 15, 2010).* This only makes sense because if the fees were not paid separately class members would have to pay them directly out of the fund.

[5] That the entire settlement amount may not be claimed does not impact the fee analysis. Fees are based on the total amount available to the class rather than the amount claimed. *See, e.g., Boeing v. Van Gemert, 444 U.S. at 480* (class members' "right to share the harvest of the lawsuit, whether or not they exercise it, is a benefit of the fund created by the efforts of . . . class counsel"); *Waters v. Int'l Precious Metals Corp., 190 F.3d at 1295-97* (noting "no case has held that a district court must consider only the actual payout in determining attorneys fees")*; Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 437-38 (2d Cir. 2007); Williams v. MGM-Pathe Comm. Co., 129 F.3d 1026 (9th Cir. 1997)* (holding a court abused its discretion by calculating fees based upon actual claims); *Pinto v. Princess Cruise Lines, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007)* ("the percentage applies to the total fund created, even where the actual payment following the claims process is lower").

*WL 5290155 at \*5-6 (S.D. Fla. Sept. 26, 2012)* (noting that fees in the Eleventh Circuit are "roughly one-third" of the class benefit and listing cases awarding fees of 30 percent and more).

*Camden I* sets out a number of factors drawn from *Johnson v. Georgia Highway Express, Inc., supra,* for use in assessing the reasonableness of a fee in a class action such as this one. An analysis of the *Johnson* factors as applied to the facts of this case, which follows, demonstrates that the requested fee is fair and reasonable.

a.    *The Time and Labor Involved.*

The first of the factors is the time and labor involved. Class Counsel have spent in excess of 3,400 hours and will invest more time in the future. [Ex. A (¶ 23), B-D (¶ 9)] We will not recite here all of the work described in the statement of facts earlier in this brief.  Additionally, Class Counsel will continue to respond to questions from class members about the settlement and their claims after this motion is filed. The work was justified in view of the issues, the manner in which the case was defended, and its quality. This factor thus supports the requested fee.

b.    *The Questions and Difficulty of the Questions Involved.*

The case involved a host of complex factual and legal questions. Importantly, the GMWL has rarely been asserted, so the case involved numerous matters of first impression (e.g., whether the GMWL applies to employees

"covered" by the FLSA by subject to an exemption, whether the "domestic worker" exception to the GMWL applies to home care workers, and whether GMWL permits "averaging"). In addition, the procedural posture led to a number of other complicated issues related to the statute of limitation and the impact of prior related cases. Finally, the substance of the case involved literally millions of data points that required substantial work by Class Counsel. The existence of these difficult issues also justifies the requested fee.

### c. The Skill Needed to Perform the Services Properly.

Proper case management and effective representation in any complex class action, particularly one based on the complex issues involved here requires the highest level of experience and skill. This case certainly was no different. Class Counsel had the necessary experience and skill to manage the case. (Docket 75, Exhibits A, B, C, and D, Declarations of Class Counsel in connection with their motion for appointment). In addition to the typical class action issues, Class Counsel handled two all-or-nothing issues of first impression before the Georgia Supreme Court and numerous issues before this Court. Indeed, but for the reputation that Class Counsel have developed for having the necessary skill to prevail in a case such as this one, it is unlikely that Defendants would have settled when they did. As a result, this factor justifies a higher fee.

17

   d.      *The Preclusion of Other Employment.*

If Class Counsel had not taken on this case, they would have been able to

spend significant time on other matters. This is true whenever lawyers handle any

significant matter requiring large amounts of time.

   e.      *The Customary Fee.*

Complex civil litigation customarily is handled on the basis of a contingent

fee because the class representatives typically cannot afford to pay on an hourly

basis. Contingent agreements typically provide for fees from 33 to 40 percent. ***See,***

***e.g., Blum v. Stemson, 465 U.S. 886, 903 n.20 (1984)*** (noting the usual practice in

tort litigation of contingent fees paying one-third of any recovery). Further, the

class representatives and Class Counsel entered into fee agreements providing for a

40% contingent fee. [Ex. D (¶ 4). The willingness of the class representatives to

enter into such agreements is further evidence that the requested award is

reasonable. ***See Blanchard v. Bergeron, 489 U.S. 87 (1989)*** ("The presence of a

pre-existing fee agreement may aid in determining reasonableness"); ***Pharr v.***

***Housing Authority, 704 F.2d 1216, 1218 (11th Cir. 1983)*** (holding that such an

agreement, although not binding on the court, may be enforced if the fee is

reasonable considering all of the ***Johnson*** factors). The requested fee here is less

than the fee agreed to by the lead Plaintiffs.  For this additional reason, the

requested fee is within the customary range.

*f.*        *Whether the Fee is Fixed or Contingent.*

This action was prosecuted entirely on a contingent fee basis. If Plaintiffs had not achieved a recovery, Class Counsel would have received nothing and, in fact, would have suffered a substantial out-of-pocket loss because they advanced all the litigation expenses. Numerous courts have recognized that such risk deserves extra compensation and is a critical factor in determining the reasonableness of a fee. ***See, e.g. In re Dun & Bradstreet Credit Svcs. Cons. Lit., 130 F.R.D. 366, 373 (S.D. Ohio 1990); Behrens v. Wometco Enters., Inc., 118 F.R.D. 534, 548 (S.D. Fla. 1988), aff'd, 889 F.2d 21 (11th Cir. 1990); In re Cont. Ill, Sec. Lit., 962 F.2d 566, 569 (7th Cir. 1992).*** As explained by a leading commentator:

> It is axiomatic that attorneys who work on a contingent fee must charge a higher fee than those who work on a noncontingent basis ... . This "higher" fee ... is not a bonus.
>
> From a pure dollars and cents economic view, this higher fee is the appropriate measure of a reasonable fee that is required in the marketplace of services, (1) to induce the attorney to agree to assume the risk that no compensation will be received unless he or she successfully achieves a benefit for the client, and (2) if ultimately successful to compensate for the costs suffered and investment income foregone by delay in payment.

***H. Newberg, Attorney Fee Awards § 1.08 (1986).***

19

> g.    *Time Limitations Imposed by the Client or*
>
> *Circumstances.*

There were times during this litigation when Class Counsel worked under considerable time pressure due to various deadlines. However, Class Counsel do not contend that this factor justifies either a higher or lower fee as time pressure in cases of this sort is expected.

> h.    *The Amount Involved and the Results Obtained.*

As noted above, the total settlement is $7,727,500, and class members are receiving over 160% of what they would have been paid if Defendants had voluntarily complied with GMWL.  As such, Class Counsel have given all class members the opportunity to receive *a higher amount* than they would have received if ResCare had paid them the requisite $5.15 per hour initially.  Given that this case is likely the only time a plaintiff has recovered under the GMWL, such a result justifies the requested fee.

The amount at issue and the result thus justify the requested award.

> i.    *The Experience, Reputation and Ability of the Attorneys.*

In the aggregate, Class Counsel have considerable experience, skill and reputation in complex civil litigation, class actions, and cases involving employment relations. This factor also supports the requested award. (Docket 75,

Exhibits A, B, C, and D, Declarations of Class Counsel in connection with their motion for appointment).

> j.      The "Undesirability" of the Case.

In **Johnson**, the court noted that civil rights attorneys who accept unpopular cases may suffer hardships deserving of a higher fee. Class counsel did not suffer such hardship. As a result, this factor does not support an enhanced award.

> k.      The Nature and Length of the Client Relationship.

Class Counsel did not have a prior relationship with the named plaintiffs, nor any member of the certified class, and thus had no incentive to charge them a lower fee than would otherwise have been appropriate in an employment wage dispute, in the hope of obtaining future business. As a result, this factor does not support an adjustment to the requested fee.

> l.      Awards in Similar Cases.

The fee sought by Class Counsel here is consistent with fees in similar cases in terms of size, complexity, benefit to the class, the effort required, and the likelihood of success.[6] According to published studies, fees in common fund class actions typically average about what Class Counsel are seeking. **See, e.g., Shaw v.**

---

[6] As noted earlier in this brief, above, courts routinely award fees of one-third or more of the class benefit. Indeed, there is an almost endless list of such awards. **See, e.g., Waters v. Int'l Precious Metals Corp., 190 F.3d 1291 (11th Cir. 1999)** (33 1/3 percent)**; Columbus Drywall & Insulation, Inc. v. Masco Corp., 2012 WL 12540344 at \*2 and**

*Toshiba America Info. Sys., Inc., 91 F.Supp.2d 942 (E.D. Tex. 2000)*

("Empirical studies show that ... fee awards in class actions average around one-third of the recovery"); *In re Checking Account Overdraft Litig., 2014 WL 11370115 at \*18* (citing a 2010 study showing that awards in the Eleventh Circuit were consistent with the fee sought here).

> m.      *Other Factors.*

At least two other factors support the requested fee.  No class member has objected to the requested fee.  *See, e.g., Strube v. American Equity Investment Life Ins. Co.*, 2006 U.S. Dist. LEXIS 28582 at \*11 ("The lack of objections to a proposed fee award is itself important evidence that the fee arrangement is reasonable.")  Further, the economics of class actions require that class counsel be adequately compensated; otherwise consumers will find it increasingly hard to find good lawyers to take their cases. As one court observed:

> [C]ourts ... have acknowledged the economic reality that in order to encourage "private attorney general" class actions brought to enforce ... laws on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid.

---

*n. 2 (N.D. Ga. Oct. 26, 2012)* (awarding fee of 33 and 1/3 percent and listing other cases awarding fees based on similar or higher percentages).

*Mashburn v. Nat'l Healthcare, Inc., 684 F. Supp. 679, 687 (M.D. Ala. 1988); see also Muehler v. Land O'Lakes, Inc., 617 F. Supp. 1370, 1375-76 (D. Minn. 1985)* ("If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and effort when it is successful, then effective representation for plaintiffs in these cases will disappear.").

### III.      The Requested Fee is Reasonable Under the Lodestar Approach.

While requiring use of the percentage of the benefit method in cases such as this one, the Eleventh Circuit has authorized courts to use the lodestar method as a cross-check. *Waters v. Int'l Precious Metals Corp., 190 F.3d 1291 at 1298.* The requested fee easily passes muster under this test. The lawyers for the class have invested more than 3,460 hours in the case valued in excess of $1.8 million at very conservative hourly rates. [Ex. A (¶ 23), B-D (¶ 9)] The hourly rates are reasonable and within the range charged by lawyers of similar experience. The time was necessarily spent, reflects a minimum of duplication of effort, and is consistent with what would be expected in litigation of this length and magnitude. Id.

Under the lodestar approach, courts typically award a multiple of the lodestar, reflecting such matters as the risk involved and the contingent nature of the fee. *See, e.g., Ingram, 200 F.R.D. at 696* (noting that multipliers range from

23

less than two to more than five times the reasonable hourly charges); *Manners,*
*1999 WL 33581944, at \*31* (finding that a multiplier of 3.8 was justified, noting
that multipliers in similar litigation have ranged from 1 through 4, and collecting
the relevant cases); *Behrens v. Wometco Enter., Inc., 118 F.R.D. 534 (S.D. Fla.
1988)* (determining that multipliers range from 2.26 to 4.5 with "three appear[ing]
to be the average"). Thus, if a typical lodestar and multiplier analysis were
employed in this case, Class Counsel could easily seek a larger fee.

## IV. Class Counsel's Costs and Expenses Are Reasonable.

Class Counsel seek a separate award for their litigation expenses.
Reimbursement of Class Counsel's expenses thus is an appropriate consideration
in assessing the reasonableness of the requested award. To date, Class Counsel
have incurred expenses of $60,277.41 and expect to incur additional expenses
associated with preparing and presenting the motion for final approval. All of these
expenses, which are detailed in the Exhibits A, B, and D were reasonably and
necessarily incurred on behalf of the class. As a result, Class Counsel should be
reimbursed for these expenses as part of the requested award. *See, e.g., Waters v.
Int'l Prec. Metals Corp., 190 F.3d at 1298* (recognizing that class counsel is
entitled to expenses in addition to fees).

Although Class Counsel's expenses exceed the $60,000 set forth in the Settlement Agreement and the notice to class members, Class Counsel is limiting its request to the $60,000 figure set forth in those documents.

## V.   The Court Should Approve Service Awards to the Class Representatives.

Courts routinely approve service awards to compensate class representatives for their time and efforts on behalf of the class and encourage them to serve in a representative capacity. *See, e.g., In re Checking Account Overdraft Litig. 2014 WL 11370115 at \*12-13* ($10,000); *Ingram, 200 F.R.D. at 695-96* ($300,000); *Enter. Energy Corp. v. Col. Gas Trans. Corp., 137 F.R.D. 240, 250-51 (S.D. Ohio 1991)* ($50,000); *Spicer v. Chi. Bd. Options Exchange, Inc., 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993)* (collecting cases approving awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff).

The class representatives devoted substantial time to this litigation, meeting with counsel, taking time to discuss the case in phone conferences, meeting to review the settlement terms, taking random calls from class members who heard of their involvement, and carrying the moral responsibility of class representation for six years. Without their efforts other class members would be receiving nothing. [Ex. B-D (¶ 11)]

Accordingly, the requested awards of $7,500 to each of the class representatives should be approved.

## CONCLUSION

For the reasons set forth in this application, Class Counsel request that they be awarded $2,575,833.33, and $60,000 in expenses, and that the Court approve incentive awards of $7,500.00 each to the class representatives, and that the Court direct Defendants to pay the funds to Class Counsel pursuant to the settlement agreement.

Respectfully submitted,

POPE & HOWARD, P.C.

\s\ *Geoffrey E. Pope*
Geoffrey E. Pope
Ga. Bar No. 583880
J. Marcus Howard
Ga. Bar No. 370076

Attorneys for Plaintiffs

945 E. Paces Ferry Road
Suite 2525, Resurgens Plaza
Atlanta, Georgia 30326
404-885-9999 – phone
gpope@popehoward.com
mhoward@popehoward.com

LEE & BRAZIEL, LLP

\s\ *J. Derek Braziel*
J. Derek Braziel
Admitted *Pro Hac Vice*

1801 N. Lamar Street, Suite 325
Dallas, Texas 75202
214-749-1400 – phone
jdbraziel@l-b-law.com

Attorneys for Plaintiffs

LAW OFFICES OF
BENJAMIN H. TERRY, P.C.

*/s/ Benjamin H. Terry*
Benjamin H. Terry
Ga. Bar No. 702425

312 Crosstown Road, # 355
Peachtree City, Georgia 30269
770-394-1502  - phone
bht@bhtlaw.com

Attorneys for Plaintiffs

## <u>CERTIFICATION OF FONT</u>

This is to certify that the foregoing pleading was prepared using Times New Roman 14 point font in accordance with Local Rule 5.1(B).

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have served a copy of the foregoing by filing this pleading with the Court's Electronic Filing System on February 26, 2019, which should ensure delivery to:

Ronald G. Polly, Jr.
Matthew A. Boyd
Hawkins Parnell Thackston & Young, LLP
4000 Sun Trust Plaza, N.E.
Atlanta, Georgia 30308


POPE & HOWARD, P.C.

*/s/ Geoffrey E. Pope*
Geoffrey E. Pope
Ga. Bar No. 583880
J. Marcus Howard
Ga. Bar No. 370076

Attorney for Plaintiffs

945 E. Paces Ferry Road
Suite 2525, Resurgens Plaza
Atlanta, Georgia 30326
404-885-9999 – phone
gpope@popehoward.com
mhoward@popehoward.com