IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISON

| | |
|---|---|
| MARGARET ANDERSON, et al., )<br>Individually and on behalf of all )<br>Others similarly situated, )<br> )<br>    Plaintiffs, )<br>v. )<br> )<br>SOUTHERN HOME CARE )<br>SERVICES, INC., and RES-CARE, INC., )<br> )<br>    Defendants. )<br> ) | CIVIL ACTION FILE NO.<br>1:13-cv-00840-LMM |

## DECLARATION OF GEOFFREY E. POPE

I, **Geoffrey E. Pope**, declare under penalty of perjury that the following statement is true and correct to the best of my information and belief.

1.

I am a shareholder at the law firm Pope & Howard, P.C. in Atlanta, Georgia. Along with our co-counsel, my firm represents the class in this litigation. I have served as co-lead counsel. This declaration will generally describe the work that has been done on this case; set forth the time my firm has spent and our applicable hourly rates; address some of the factors bearing on the matter of attorneys' fees; and describe the expenses we have incurred.

**Exhibit B**

2.

I have been licensed to practice law in Georgia since 1993. I hold a B.A. with high honors from the University of Georgia (1990) and a J.D. <u>cum laude</u> from the University of Georgia (1993).  I am admitted to practice before all state and federal courts in Georgia as well as the United States Court of Appeals for the 11th Circuit.  I am a trial attorney specializing in catastrophic personal injury and wrongful death as well as other types of complex litigation and trial work.  I have tried many cases to verdict.  Our firm's recent verdicts have been listed in Top Verdicts magazine.  I am a Past President of the Georgia Trial Lawyers Association and have held numerous leadership positions in that organization.  I am a Fellow of the American Bar Foundation, and a member of the American Board of Trial Advocates.  I was recently included in the SuperLawyer listings for the 13th consecutive year and am also regularly listed in the <u>Georgia Trend</u> "Legal Elite."  In 2007, I was designated by the <u>Daily Report</u> as one of 15 Georgia lawyers under the age of 40 who are "On the Rise".  I am a graduate of Gerry Spence's Trial Lawyers' College and remain active in that organization.

3.

I have represented hundreds of individual clients, including employees, employers, insurance companies, business corporations, victims of negligence and fraud, and others.  I have represented and counseled clients in a wide variety of

matters, including cases involving wage and hour, ERISA, employment discrimination. I have also been involved in numerous complex, multi-party cases, including class actions and cases under multi- district supervision. Further information about my background at that of our firm is contained on our firm's website at www.popehoward.com.

4.

Our firm's involvement in this matter grew out of the fact that we were lead counsel for Plaintiffs in two related matters, <u>Geddis v. Southern Home Care, Inc. & ResCare, Inc.</u>, No. 3:07-cv-036-TCB (N.D. Ga. filed May 1, 2007) and <u>Ford v. ResCare Inc. & Southern HomeCare, Inc.</u>, No. 11CV-2256-2 (Superior Ct. of Dougherty Cty. filed Oct. 6, 2011). As the Court knows, *Geddis* was a Fair Labor Standards Act (FLSA) collective action where Plaintiffs attempted to assert claims under the Georgia Minimum Wage Law (GMWL), but the Northern District refused to exercise supplemental jurisdiction over the GMWL claims. The *Ford* case was the resultant attempt to assert the GMWL claims on behalf of essentially the same class as is represented here. However, the individual *Ford* plaintiffs settled at the same time as the *Geddis* case settled. Since no class had been certified in *Ford* and many former employees of ResCare had not opted into the *Geddis* collective action, some 9,167 employees of ResCare remained unaffected by the settlements of the *Geddis* and *Ford* cases. Four of those present and former

employees had previous contact with Class Counsel in connection with the investigation of the *Geddis* claims, but failed to submit paperwork joining that collective action. They approached Class Counsel and inquired if any remedy remained for them. All four hired Class Counsel on a contingency fee basis and agreed to act as class representatives. Class Counsel filed a Complaint in DeKalb County Superior Court on February 15, 2013, and Defendants removed the case to this Court. For the next five-and-a-half years, the parties litigated the case intensely.

5.

Going into the case, we knew that we likely faced several legal challenges. Our research could not locate any other case where a plaintiff had recovered damages under the Georgia Minimum Wage Law (GMWL), so we expected and ultimately did face several issues of first impression. Three of the issues dealt exclusively with the GMWL and its application to Class Members. The first two of these issues were raised in Defendants initial motion to dismiss, namely whether Class Members are excluded from the GMWL because they fall under an exemption to the FLSA and whether Class Members satisfy the "domestic servant" exception to the GMWL. After extensive briefing in the trial court, the Court certified these two questions to the Georgia Supreme Court. My partner Marc Howard and I took the lead on handling the briefing and arguments before

the Georgia Supreme Court, though other Class Counsel assisted in the preparation as well.  Knowing that a loss on either issue would deprive the Class of any recovery, we spent a great deal of time crafting briefing designed to resonate with individual justices.  Similarly, we did the same with our oral argument preparation and in fact engaged in multiple "moots" or practice arguments.  Ultimately, Justice David Nahmias authored a unanimous opinion finding in our favor on both issues.

The third issue specific to the GMWL consisted of whether Defendants complied with the GMWL if the pay to an employee averaged $5.15 per hour for all hours worked even though Defendants chose not to compensate the employee at all for some of the hours worked.  If so, very few Class Members were likely to achieve any recovery.  We addressed this issue in the context of a motion to limit discovery and again spent a great deal of time crafting statutory construction arguments on this issue of first impression, and, as the Court knows, were successful on this issue.

We also faced numerous other legal challenges, including the application of GMWL statute of limitation, the application of the "no-piggyback" rule and cross-jurisdictional tolling to Plaintiffs' efforts to toll the statute of limitation during the pendency of the *Geddis* and *Ford* cases.  These represented some of the legal issues Class Counsel faced and addressed.

6.

In addition to the work on the legal issues, discovery and the data provided informally was extensive.  The parties eventually agreed to close the case administratively, exchange information, and attempt a mediation.  Although the formal case was administratively closed, Class Counsel's work intensified.  Class Counsel Derek Braziel took the lead in addressing the data and creating damages models, but all four of us provided input.  The data included payroll, mileage, and worksite location (i.e., residence address of ResCare client).  The data was converted to Excel spreadsheets, which are program-limited to *one million* data rows.  The data involved here was so copious that numerous data files had to be transferred to different spreadsheets as they consisted of several million rows, and each row contained several different data points.  Class Counsel worked extensively with the data to model damages under a variety of different scenarios (e.g., different MPH, different amounts of time in addition to driving, etc.).  Class counsel hired a forensic accountant with expertise in statistics to help prepare damages models for the various scenarios.

Defendants produced a damage model based on Google Maps applications, and Class Counsel had to evaluate this damages model.  Specifically, Class Counsel devoted extensive time to researching modern mapping applications and

conferred with two different computer mapping experts regarding the validity of claims by Defendants' expert.

In addition to damages modeling and working with reams of data, Class Counsel also conducted significant investigation into the typical work habits of Class Members such as the amount of time spent at a client's home after the "billed portion" was complete, whether Class Members went home during gaps in the day, record-keeping practices, driving patterns, etc.  In the lead-up to the mediation as the parties exchanged damages models, Defendants made numerous assertions to Class Counsel regarding their business model and how it affected the "windshield time" covered by GMWL.  Class Counsel Ben Terry took the lead on this investigation and interviewed numerous ResCare employees or former employees to determine what was actually happening "on the ground" with real employees, in real-time.  In addition to the lead Plaintiffs, Class Counsel interviewed numerous other ResCare employees and former employees, some of these were precluded from the Class by their participation in the predecessor *Geddis* litigation.  In all, Mr. Terry conducted scores of interviews with lead Plaintiffs, class members, and other ResCare employees.

7.

All four Class Counsel travelled to Defendants' Louisville, Kentucky headquarters for a mediation with Hunter Hughes, a well-respected mediator of

national reputation. The mediation was unsuccessful, and Mr. Hughes continued working with the parties for months after the mediation in the hopes of achieving a resolution. Ultimately, Mr. Hughes declared an impasse, and the parties reopened the case. Negotiations continued, and ultimately the parties reached this resolution. Class Counsel hired and supervised third-party administrator Simpluris in administering the settlement.

8.

Class Counsel had access to all of the discovery obtained in *Geddis* and *Ford* as well as the discovery obtained in this case, so Class Counsel is convinced that it had sufficient data to evaluate the Defendants' settlement offers. I am firmly convinced that this settlement is in the best interests of Class Members. Based upon the information Class Counsel received and reviewed as well as upon discussions with the third-party administrator Simpluris, Class Members are generally receiving 160% of what they would have received is Defendants had paid Class Member $5.15 per hour under the GMWL. Given the risk of an all-or-nothing issue on appeal or later in the litigation, this settlement is reasonable, just, and in the best interests of Class Members. The negotiations were conducted at arm's length between the parties, and the resolution was only achieved after intensive litigation and negotiations. At class counsel's insistence, the parties did

not negotiate the amounts for attorneys' fees, expenses or service awards to the class representatives until after the merits of the settlement had been finalized.

9.

Pope & Howard, P.C.'s work is not usually billed and kept on an hourly basis, so we did not keep meticulous records of all of our time expended on this case.  However, this case involved an extraordinarily large amount of work for our firm.  Marc Howard and I did all of the attorney work at our firm and estimate that we spent well in excess of 1,600 hours total on the case.  We have regularly handled significant cases of all types, but this case is probably our most labor intensive.   In addition, our support staff, including our highly-skilled and very experienced paralegal Karen Wayman, worked tirelessly on this case.  Our support staff spent significant time assisting us.   All of the time spent by Marc Howard, Karen Wayman, and me were reasonable and necessary to the prosecution of this matter to achieve the outcome. We expect to continue to provide work as needed to assist Class Members and the claims administrator.  In addition, we will spend more time as we go through the approval process.  Our firm does not regularly do hourly rate work, so we have not tested the marketplace to see what our services would bring.  What little hourly rate work we have done has been at or around $500 per hour.  In my opinion Mr. Howard and I could charge more than $500 per hour, so I think this is a conservative estimate of a reasonable hourly rate for either

of us. My firm has reasonably incurred out-of-pocket expenses of $40,015.09 in prosecuting the case. Attached as Exhibit 1 is an itemization of the expenses we incurred.

10.

The rates set forth above are reasonable and commensurate with, if not lower than, rates charged by lawyers in Atlanta of comparable skill and experience. All of the time spent by our lawyers was reasonable and necessary in prosecuting this action. Our work on this case has been purely contingent in nature. We have received no compensation for our time to date and we will not receive any fees other than as awarded by the Court. This case involved substantial economic risk. We knew Defendants were well-heeled and aggressive adversaries and would be defended by top flight defense counsel. At the time the case was filed, it was apparent that it could only be pursued as a class action; that any damages suffered by the named plaintiffs did not justify an individual lawsuit; that a contingent fee was the only option; that the expenses of litigation would be substantial; that the magnitude of damages suffered by the class was uncertain; that we would have to advance expenses without any guarantee of reimbursement; that the prospects for certification of a class were uncertain; and that substantial difficulties might prevent prevailing on liability.

11.

I enthusiastically support approval of the service awards that Defendants have agreed to pay the named class representatives. Each of them has incurred time, trouble and expense in serving as class representative, communicating with class counsel, and providing information useful to the prosecution of these claims. Their services were both helpful to class counsel and beneficial to the class. Indeed, but for their efforts, other class members would be receiving nothing.

12.

I declare under penalty of perjury under the laws of the United States that the foregoing declaration is true and correct.

*February 26, 2019*             */s/ Geoffrey E. Pope*
Date                                     Geoffrey E. Pope

Pope & Howard, P.C.
Transaction Detail by Account
*Rescare - Anderson*

| Date | Customer | Name | Memo/Description | Amount | Balance |
|---|---|---|---|---:|---:|
| **Case Reimbursable Expenses** | | | | | |
| 01/30/2013 | Rescare-Anderson | State Bar of Georgia | Application fees for State Bar for Braziel in Rescare State Dekalb. | 200.00 | 200.00 |
| 02/14/2013 | Rescare-Anderson | Dekalb County Superior Court | Filing Fees for Complaint | 239.50 | 439.50 |
| 02/19/2013 | Rescare-Anderson | AQuickDelivery | Courier: docs to Court and return | 64.71 | 504.21 |
| 02/28/2013 | Rescare-Anderson | MLQ Attorney Services | Service of Process of Southern Home Care and Rescare. | 75.00 | 579.21 |
| 05/16/2013 | Rescare-Anderson | Clerk, U.S. District Court | Filing Fee for Pro Hac Vice Fees | 150.00 | 729.21 |
| 04/20/2015 | Rescare-Anderson | Geoffrey E. Pope | Reimb GA Supreme Court Exp for Rescare/Anderson | 640.00 | 1,369.21 |
| 04/30/2015 | Rescare-Anderson | AQuickDelivery | Courier from GA Supreme Ct to Firm | 14.88 | 1,384.09 |
| 05/26/2015 | Rescare-Anderson | | Lunch for moot panel | 17.28 | 1,401.37 |
| 07/08/2016 | Rescare-Anderson | TransUnion Risk and Alternative Data Solutions, Inc. | TLO reports -people/address search | 8.00 | 1,409.37 |
| 01/10/2017 | Rescare-Anderson | Montrell Vann | Anderson v. Southern Home Care #1:13-cv-00480-LMM | 137.75 | 1,547.12 |
| 01/17/2017 | Rescare-Anderson | AQuickDelivery | Courier to USDC | 19.82 | 1,566.94 |
| 01/19/2017 | Rescare-Anderson | AQuickDelivery | Courier to USDC | 19.82 | 1,586.76 |
| 03/03/2017 | Rescare-Anderson | Thomson Reuters | Westlaw research 2/2017 | 61.76 | 1,648.52 |
| 3/31/2017 | Rescare-Anderson | Thomson Reuters | Westlaw research 3/2017 | 128.05 | 1,776.57 |
| 05/30/2017 | Rescare-Anderson | The Gingras Firm, LLC | 1/2 expert retainer | 5,000.00 | 6,776.57 |
| 06/05/2017 | Rescare-Anderson | Thomson Reuters | Westlaw research 5/2017 | 168.50 | 6,945.07 |
| 07/05/2017 | Rescare-Anderson | Thomson Reuters | Westlaw research 6/2017 | 110.12 | 7,055.19 |
| 08/09/2017 | Rescare-Anderson | Delta Air Lines | JMH and GEP airfare to/fr Louisville for Mediation | 2,010.53 | 9,065.72 |
| 08/11/2017 | Rescare-Anderson | Lyft/Uber/Taxi | Ground transportion in Louisville for Mediation | 172.33 | 9,238.05 |
| 08/15/2017 | Rescare-Anderson | ABM Atlanta Airport | Parking | 20.00 | 9,258.05 |
| 08/15/2017 | Rescare-Anderson | hilton | JMH and GEP Hotel in Louisville for mediation | 467.99 | 9,726.04 |
| 08/31/2017 | Rescare-Anderson | Thomson Reuters | Westlaw research 8/2017 | 364.69 | 10,090.73 |
| 09/08/2017 | Rescare-Anderson | The Gingras Firm, LLC | Expert expense (P&H 1/2) | 7,920.00 | 18,010.73 |
| 09/19/2017 | Rescare-Anderson | Butchertown Grocer | Meals during travel to Louisville for mediation | 247.99 | 18,258.72 |
| 10/01/2017 | Rescare-Anderson | Thomson Reuters | Westlaw research 9/2017 | 836.27 | 19,094.99 |
| 10/05/2017 | Rescare-Anderson | Hunter ADR | Mediation fee | 3,625.00 | 22,719.99 |
| 10/31/2017 | Rescare-Anderson | Thomson Reuters | Westlaw research 10/2017 | 339.98 | 23,059.97 |
| 12/01/2017 | Rescare-Anderson | Thomson Reuters | Westlaw research 11/2017 | 170.86 | 23,230.83 |
| 03/02/2018 | Rescare-Anderson | Thomson Reuters | Westlaw research 2/2018 | 198.20 | 23,429.03 |
| 04/30/2018 | Rescare-Anderson | Thomson Reuters | Westlaw research 4/2018 | 187.53 | 23,616.56 |
| 05/07/2018 | Rescare-Anderson | MLQ Attorney Services | Rescare - Service upon Kyonnie Sutherland | 194.00 | 23,810.56 |
| 05/07/2018 | Rescare-Anderson | MLQ Attorney Services | Rescare - Service upon Margaret Anderson | 350.00 | 24,160.56 |
| 5/16/2018 | Rescare-Anderson | TransUnion Risk and Alternative Data Solutions, Inc. | TLO reports on Anderson and Sutherland | 20.00 | 24,180.56 |
| 02/05/2019 | Rescare-Anderson | | Copies | 1,191.55 | 25,372.11 |
| 2/26/2019 | Rescare-Anderson | Simpluris (to be paid) | Costs of additional class notice | 14,643.08 | 40,015.19 |
| **Total for Case Reimbursable Expenses** | | | | **$ 40,015.19** | |

**Exhibit 1**