IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISON

|  |  |  |
|---|---|---|
| MARGARET ANDERSON, et al., | ) | |
| Individually and on behalf of all | ) | |
| Others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | CIVIL ACTION FILE NO. |
| | ) | 1:13-cv-00840-LMM |
| SOUTHERN HOME CARE | ) | |
| SERVICES, INC., and RES-CARE, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DECLARATION OF BENJAMIN H. TERRY

I, **Benjamin H. Terry**, declare under penalty of perjury that the following

statement is true and correct to the best of my information and belief.

1.

I am a shareholder at the law firm Law Offices of Benjamin H. Terry, P.C.

in Peachtree City, Georgia. Along with co-counsel, my firm represents the class

in this litigation.  I have served as co-lead counsel. This declaration will

generally describe the work that has been done on this case; set forth the time my

firm has spent and our applicable hourly rates;  address  some  of  the  factors

bearing  on  the  matter  of  attorneys' fees;  and describe the expenses we have

incurred.

**Exhibit D**

2.

I have been licensed to practice law in Georgia since 1981. I hold a B.A. with honors from the University of Virginia (1978) and a J.D. from the University of Georgia (1981).  I am admitted to practice before all state and federal courts in Georgia as well as the United States Courts of Appeal for the 5th and 11th Circuit, and the United States Supreme Court.  I am a trial attorney specializing in workers compensation, employment law, and personal injury as well as other types of complex litigation and trial work.  I have tried several cases to jury verdict, and hundreds of administrative hearings.

3.

I have represented hundreds of individual clients, including employees, employers, insurance companies, business corporations, victims of negligence and fraud, and others.  I have represented and counseled clients in a wide variety of matters, including cases involving wage and hour, ERISA, and employment discrimination.  I have also been involved in numerous complex, multi-party cases, including class actions and collective actions.  Further information about my background and that of my firm is contained on the firm's website at www.bhtlaw.com.

4.

My firm's involvement in this matter grew out of the fact that I was co-lead counsel for Plaintiffs in two related matters, Geddis v. Southern Home Care, Inc. & ResCare, Inc., No. 3:07-cv-036-TCB (N.D. Ga. filed May 1, 2007) and Ford v. ResCare Inc. & Southern HomeCare, Inc., No. 11CV-2256-2 (Superior Ct. of Dougherty Cty. filed Oct. 6, 2011). As the Court knows, *Geddis* was a Fair Labor Standards Act (FLSA) collective action where Plaintiffs' attempted, among other things, to assert claims under the Georgia Minimum Wage Law (GMWL), but the Northern District refused to exercise supplemental jurisdiction over the GMWL claims. The *Ford* case was the resultant attempt to assert the GMWL claims on behalf of essentially the same class as is represented here. However, the individual *Ford* plaintiffs settled at the same time as the *Geddis* case settled. Since no class had been certified in *Ford* and many former employees of ResCare had not opted into the *Geddis* collective action, some 9,167 employees of ResCare remained unaffected by the settlements of the *Geddis* and *Ford* cases.

Ms. Geddis was originally a client of my firm in a workers compensation matter, and the inadequacy of her paid income first came to light to me in that litigation. Ms. Geddis and the lead plaintiffs in that case met me personally at the outset of that litigation, and therefore by word-of-mouth I became the default point of contact for employees and former employees who were curious about the

litigation.  In this way, among Class Counsel, I became the attorney primarily responsible for direct contact with lead plaintiffs, employees opting into *Geddis*, putative members of the not-certified *Geddis* Rule 23 class, members of the *Anderson* class, and potential employee-witnesses on key issues in *Geddis, Ford,* and *Anderson*.  Some of these individuals contacted me after the deadline for opting into *Geddis*, and some of them expressed a desire to pursue whatever legal claims might remain to them under GMWL, and asked to retain me as counsel. Contingency fee agreements were reached with me, Pope & Howard, and Mr. Braziel.  The individual contingency fee agreements called for a fee of 40% of the total sum recovered.

Class Counsel filed a Complaint in DeKalb County Superior Court on February 15, 2013, and Defendants removed the case to this Court.  For the next five-and-a-half years, the parties litigated the case intensely.

5.

Going into the case, we knew that we likely faced several legal challenges. Our research could not locate any other case where a plaintiff had recovered damages under the Georgia Minimum Wage Law (GMWL), so we expected and ultimately did face several issues of first impression.  Three of the issues dealt exclusively with the GMWL and its application to Class Members.  The first two of these issues were raised in Defendants' initial motion to dismiss, namely

4

whether Class Members are excluded from the GMWL because they fall under an

exemption to the FLSA and whether Class Members satisfy the "domestic servant"

exception to the GMWL.  After extensive briefing in the trial court, the Court

certified these two questions to the Georgia Supreme Court.  My firm assisted

Pope & Howard in this aspect of the case.  Knowing that a loss on either issue

would deprive the Class of any recovery, we spent a great deal of time crafting

briefing designed to resonate with individual justices.  Ultimately, Justice David

Nahmias authored a unanimous opinion finding in our favor on both issues.

The third issue specific to the GMWL consisted of whether Defendants

complied with the GMWL if the pay to an employee averaged $5.15 per hour for

all hours worked even though Defendants chose not to compensate the employee at

all for some of the hours worked.  If so, very few Class Members were likely to

achieve any recovery.  We addressed this issue in the context of a motion to limit

discovery and again spent a great deal of time crafting statutory construction

arguments on this issue of first impression, and, as the Court knows, were

successful on this issue.

We also faced numerous other legal challenges, including the application of

GMWL statute of limitation, the application of the "no-piggyback" rule and cross-

jurisdictional tolling to Plaintiffs' efforts to toll the statute of limitation during the

pendency of the *Geddis* and *Ford* cases.  These represented some of the legal issues Class Counsel faced and addressed.

6.

In addition to the work on the legal issues, formal discovery and the informally provided data was extensive.  The parties eventually agreed to close the case administratively, exchange information, and attempt a mediation.  Although the formal case was administratively closed, Class Counsel's work intensified. Class Counsel Derek Braziel took the lead in addressing the data and creating damages models, but all four of us provided input.  The data included payroll, mileage, and worksite location (i.e., residence address of ResCare client).  The data was converted to Excel spreadsheets, which are program-limited to *one million* data rows.  The data involved here was so copious that numerous data files had to be transferred to different spreadsheets as the consisted of several million rows, and each row contained several different data points.  Class Counsel worked extensively with the data to model damages under a variety of different scenarios (e.g., different MPH, different amounts of time in addition to driving, etc.). I was assigned to work with Mr. Braziel to analyze the data provided, and re-cast it in formats that allowed us to assess the implications for each legal issue on the damage modeling.  Mr. Braziel and I spent significant time on our own, and together in extended telephone conferences working on this project.  Class Counsel

hired a forensic accountant with expertise in statistics to help prepare damages models for the various scenarios.

Defendants produced a damage model based on Google Maps applications, and Class Counsel had to evaluate this damages model. Specifically, Class Counsel devoted extensive time to researching modern mapping applications and conferred with two different computer mapping experts regarding the validity of claims by Defendants' expert.

In addition to damages modeling and working with reams of data, Class Counsel also conducted significant investigation into the typical work habits of Class Members such as the amount of time spent at a client's home after the "billed portion" was complete, whether Class Members went home during gaps in the day, record-keeping practices, driving patters, etc. In the lead-up to the mediation as the parties exchanged damages models, Defendants made numerous assertions to Class Counsel regarding their business model and how it affected the "windshield time" covered by GMWL. My office took the lead on this investigation and interviewed numerous ResCare employees or former employees to determine what was actually happening "on the ground" with real employees, in real-time. In addition to the lead Plaintiffs, Class Counsel interviewed numerous other ResCare employees and former employees, including some precluded from the Class by

their participation in the predecessor *Geddis* litigation.  I conducted scores of

interviews with lead Plaintiffs, class members, and other ResCare employees.

7.

All four Class Counsel travelled to Defendants' Louisville, Kentucky

headquarters for a mediation with Hunter Hughes, a well-respected mediator of

national reputation.  The mediation was unsuccessful, and Mr. Hughes continued

working with the parties for months after the mediation in the hopes of achieving a

resolution.  Ultimately, Mr. Hughes declared an impasse, and the parties reopened

the case.  Negotiations continued, and ultimately the parties reached this

resolution.  Class Counsel hired and supervised third-party administrator Simpluris

in administering the settlement.

8.

Class Counsel had access to all of the discovery obtained in *Geddis* and

*Ford,* and the discovery obtained in this case, so Class Counsel is convinced that it

had sufficient data to evaluate the Defendants' settlement offers.  I am firmly

convinced that this settlement is in the best interests of Class Members.  Based

upon the information Class Counsel received and reviewed as well as upon

discussions with the third-party administrator Simpluris, Class Members are

generally receiving 160% of what they would have received if Defendants had paid

Class Member $5.15 per hour under the GMWL, for the hours in question.  Given

8

the risk of an all-or-nothing issue on appeal or later in the litigation, this settlement is reasonable, just, and in the best interests of Class Members.  The negotiations were conducted at arm's length between the parties, and the resolution was only achieved after intensive litigation and negotiations.  At Class Counsel's insistence, the parties did not negotiate the amounts for attorneys' fees, expenses or service awards to the class representatives until after the merits of the settlement had been finalized.

9.

My firm's work is not usually billed and kept on a date-specific basis, but we do keep track of all work performed.  This case involved an extraordinarily large amount of work for my firm, and certainly is the most attorney time I have ever devoted to a single matter.  My tabulation of work done currently shows 2,556.8 hours, and this is a fair and reasonable estimate of the time I have spent on this case.  In the exercise of billing discretion, I would write down my time significantly and estimate that I would only bill for 1,000 hours over the six-year span of this litigation.  This time was reasonable and necessary to the prosecution of this matter to achieve the outcome.  I expect to continue to provide work as needed to assist Class Members and the Claims Administrator.  In addition, we will spend more time as we go through the approval process.  My firm does not regularly do hourly rate work, so we have not tested the marketplace to see what

our services would bring.  Based on my knowledge of other attorneys of like experience and skill, in my opinion I could charge more than $500 per hour for work billed on an hourly basis, so this is a conservative estimate of a reasonable hourly rate for me.  My firm has reasonably incurred out-of-pocket expenses of $1,865.18 in prosecuting the case.  I expect that the expenses of other Class Counsel far exceed that, as our agreement is that the principal litigation expense will be shouldered by them, and the lion's share of expenses which relates to work done by me was incurred by them.  Attached as Exhibit 1 is an itemization of the expenses I directly incurred.

10.

The rate set forth above is reasonable and commensurate with, if not lower than, rates charged by lawyers in Atlanta of comparable skill and experience.  All of the time spent by me was reasonable and necessary in prosecuting this action.  Our work on this case has been purely contingent in nature.  We have received no compensation for our time to date and we will not receive any fees other than as awarded by the Court.  This case involved substantial economic risk.  We knew Defendants were well-heeled and aggressive adversaries and would be defended by top-flight defense counsel.  At the time the case was filed, it was apparent that it could only be pursued as a class action; that any damages suffered by the named plaintiffs did not justify an individual lawsuit; that a contingent fee was the only

option; that the expenses of litigation would be substantial; that the magnitude of damages suffered by the class was uncertain; that we would have to advance expenses without any guarantee of reimbursement; that the prospects for certification of a class, particularly a multi-state class, were uncertain; and that substantial difficulties might prevent prevailing on liability.

11.

I enthusiastically support approval of the service awards that Defendants have agreed to pay the named class representatives.  Each of them has incurred time, trouble and expense in serving as class representative, communicating with Class Counsel, and providing information useful to the prosecution of these claims. Their services were both helpful to Class Counsel and beneficial to the class. Indeed, but for their efforts, other class members would be receiving nothing.

12.

I declare under penalty of perjury under the laws of the United States that the foregoing declaration is true and correct.

*February 26, 2019*
Date

*/s/ Benjamin H. Terry*
Benjamin H. Terry

11

# EXPENSES, LOBHT PC, ANDERSON V. RESCARE, ET AL.

| | | |
|---|---|---|
| July 27, 2012 | Travel and meeting expense | $87.20 |
| August 3, 2012 | Travel and meeting expense | $93.21 |
| April 28, 2015 | Travel expense | $38.00 |
| August 9, 2017 | Travel expense | $700.00 |
| August 15, 2017 | Travel expense | $16.50 |
| August 15, 2017 | Travel expense | $396.00 |
| August 15, 2017 | Travel expense | $9.35 |
| August 15, 2017 | Travel expense | $207.77 |
| August 16, 2017 | Travel expense | $3.59 |
| August 17, 2017 | Travel expense | $75.00 |
| August 17, 2017 | Parking expense | $39.00 |
| August 17, 2017 | Travel expense | $16.50 |
| November 8, 2018 | Travel expense and meeting | $77.24 |
| November 27, 2018 | Travel expense and meeting | $88.12 |
| | Reproduction/imaging expense | $17.70 |
| | | |
| **TOTAL** | | **$1,865.18** |

**Exhibit 1**